MAR-17-2005  14:46    AOC-PROCUREMENT    202 226 7056    P.03

Premium Included in Performance Bond

| PAYMENT BOND *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* | OMB No.:9000-0045 |
|---|---|---|
| Bond No. 8715053 | July 16, 2003 | |

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* |
|---|---|
| Vista Contracting, inc. 1310 Pennsylvania Avenue, SE Washington, DC 20003 | ☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE   ☒ CORPORATION   STATE OF INCORPORATION   DC |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | |
|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| Fidelity and Deposit Company of Maryland 707 East Main Street, Suite 1800 Richmond, VA 23218 | | 591 | 720 | 00 |
| | CONTRACT DATE 7/14/2003 | CONTRACT NO. AOC-0300043 | |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL | | | |
|---|---|---|---|---|
| Vista Contracting, Inc. | | | | |
| SIGNATURE(S) | 1. By (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. WOLFGANG STADLE PRESIDENT | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| Fidelity and Deposit Company of Maryland | | | | |
| SURETY A | NAME & ADDRESS | 707 East Main Street, Suite 1800 Richmond, VA 23218 | STATE OF INC. MD | LIABILITY LIMIT $13,931,000. | Corporate Seal |
| | SIGNATURE(S) | 1. By Patricia Lewis | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Patricia L. Lewis Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

EXHIBIT "A"    05 1673    FILED

AUG 2 2 2005

NANCY MAYER WHITTINGTON, CLERK

MAR-17-2005  14:46    AOC-PROCUREMENT    202 226 7056    P.04

## CORPORATE SURETY(IES) (Continued)

| | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| **SURETY B** NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space

designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A (REV.10-98) BACK**

MAR-17-2005   14:46        ADC-PROCUREMENT                           202 226 7056     P.05



**ZURICH**

# THIS IMPORTANT DISCLOSURE NOTICE IS PART OF YOUR BOND

We are making the following informational disclosures in compliance with The Terrorism Risk Insurance Act of 2002. No action is required on your part.

### Disclosure of Terrorism Premium

The premium charge for risk of loss resulting from acts of terrorism (as defined in the Act) under this bond is $__waived__. This amount is reflected in the total premium for this bond.

### Disclosure of Availability of Coverage for Terrorism Losses

As required by the Terrorism Risk Insurance Act of 2002, we have made available to you coverage for losses resulting from acts of terrorism (as defined in the Act) with terms, amounts, and limitations that do not differ materially as those for losses arising from events other than acts of terrorism.

### Disclosure of Federal Share of Insurance Company's Terrorism Losses

The Terrorism Risk Insurance Act of 2002 establishes a mechanism by which the United States government will share in insurance company losses resulting from acts of terrorism (as defined in the Act) after a insurance company has paid losses in excess of an annual aggregate deductible. For 2002, the insurance company deductible is 1% of direct earned premium in the prior year; for 2003, 7% of direct earned premium in the prior year; for 2004, 10% of direct earned premium in the prior year; and for 2005, 15% of direct earned premium in the prior year. The federal share of an insurance company's losses above its deductible is 90%. In the event the United States government participates in losses, the United States government may direct insurance companies to collect a terrorism surcharge from policyholders. The Act does not currently provide for insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.

### Definition of Act of Terrorism

The Terrorism Risk Insurance Act defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1.  to be an act of terrorism;
2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;
3.  to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of title 49, United 17 States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4.  to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

These disclosures are informational only and do not modify your bond or affect your rights under the bond.

Copyright Zurich American Insurance Company 2003

-0050749.doc

## Power of Attorney
## FIDELITY AND DEPOSIT COMPANY OF MARYLAND

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, by PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Company, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint Frank C. RODDEY, JR. and Patricia L. LEWIS, both of Alexandria, Virginia, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: any and all bonds and undertakings and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Company, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons. This power of attorney revokes that issued on behalf of Frank C. RODDEY, JR., Patricia L. LEWIS, dated August 31, 2000.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Company, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seal of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, this 22nd day of January, A.D. 2003.

ATTEST:                                        FIDELITY AND DEPOSIT COMPANY OF MARYLAND



_T. E. Smith_        _Assistant Secretary_        By: _Paul C. Rogers_        _Vice President_

State of Maryland } ss:
City of Baltimore }

**FOR YOUR PROTECTION,
LOOK FOR THE ZURICH WATERMARK**

On this 22nd day of January, A.D. 2003, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and that the said Corporate Seal and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

_Sandra Lynn Mooney_        _Notary Public_
_Sandra Lynn Mooney_        _Notary Public_
My Commission Expires: January 1, 2004

POA-F 175-2017

## EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the said Company,

this _10th_ day of _July_ , _2003_ .

_Assistant Secretary_

1997 EDITION

# AIA DOCUMENT A401-1997

## Standard Form of Agreement Between Contractor and Subcontractor

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.

**AGREEMENT** made as of the 15th      day of   **July**
in the year 2003
*(In words, indicate day, month and year)*

**BETWEEN** the Contractor:     VISTA CONTRACTING, INC.
*(Name, address and other information)*    1310 PENNSYLVANIA AVE., SE
WASHINGTON, DC   20003

and the Subcontractor:      DAVID ALLEN COMPANY
*(Name, address and other information)*   PO BOX 3163
MANASSAS, VA 20108-2775

The Contractor has made a contract for construction dated

With the Owner:      ARCHITECT OF THE CAPITOL
*(Name, address and other information)*   FORD HOUSE OFFICE BUILDING
2nd & D STREETS, SW
WASHINGTON, DC   20515

For the following Project:
*(Include detailed description of Project, location and address)*
LONGWORTH HOUSE OFFICE BUILDING
INDEPENDENCE AVE, SW & SOUTH CAPITOL ST.
WASHINGTON, DC   20515

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (from which compensation amounts may be deleted) and the other Contract Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:    ARCHITECT OF THE CAPITOL
*(Name, address and other information)*   FORD HOUSE OFFICE BUILDING
2nd & D STREETS, SW
WASHINGTON, DC   20515



© 1997   A I A®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The Contractor and the Subcontractor agree as follows    **EXHIBIT " B "**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Copyright 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

1

**Longworth House Office Building – North, West & East Corridor Renovations
AOC-0300043**

Scope of Work for David Allen Company

**As per Drawings:**
North & West Corridor Renovation:  A001, A002, AD101, AD102, AD103, AD104,
AD105, A106, A107, A108, A109, A110, A601

East Corridor renovation:  A001, A002, AD101, AD102, AD103,  A107, A108, A109,
A601

**And Specifications:**

NORTH & WEST CORRIDOR RENOVATIONS          EAST CORRIDOR RENOVATIONS
FILE NUMBER: 980054                                          FILE NUMBER: 960020

01000 General Requirements                              01000 General Requirements
01732 Selective Demolition                                  01732 Selective Demolition
03542 Cement-Based Underlayment                   03542 Cement-Based Underlayment
07920 Joint Sealants                                          07920 Joint Sealants
09402 Epoxy Terrazzo                                       09402 Epoxy Terrazzo
09751 Interior Stone Facing                              09751 Interior Stone Facing

David Allen Company is to furnish all labor and materials for the complete installation of
epoxy terrazzo flooring and thickset terrazzo flooring, stone base and plinth stone base, and
reinstallation of existing thresholds.

Install epoxy terrazzo flooring in East, West and North Corridors.  Install mortar bed in
North and West Corridors.  Install stone base and plinth in all corridors.

NORTH & WEST CORRIDOR RENOVATIONS:  David Allen Company is installing
subfloor, therefore Vista Contracting is not responsible for imperfect level or flatness.

EAST CORRIDOR RENOVATIONS:  3/8" of concrete floor to be removed by means of
milling by VISTA Contracting, Inc.  VISTA Contracting not responsible for imperfect
level or flatness.  It is mutually understood that ¼" variance (leeway) is acceptable to
David Allen Company.

Hours of Work: 24 hours/7 days
Schedule:  August 7, 2003 through August 31, 2003

## ARTICLE 1  THE SUBCONTRACT DOCUMENTS

1.1    The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

1.2    Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

1.3    The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

1.4    The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

## ARTICLE 2  MUTUAL RIGHTS AND RESPONSIBILITIES

2.1    The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Paragraph 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

2.2    The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.



© 1997  A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**2**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 3  CONTRACTOR

**3.1    SERVICES PROVIDED BY THE CONTRACTOR**

3.1.1    The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Paragraph 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

3.1.2    The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.

3.1.3    Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

**3.2    COMMUNICATIONS**

3.2.1    The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

3.2.2    The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

3.2.3    The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

3.2.4    If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

3.2.5    The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

3.2.6    If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

**3.3    CLAIMS BY THE CONTRACTOR**

3.3.1    Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.



©1997  A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**3**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

3.3.2   The Contractor's claims for services or materials provided the Subcontractor shall require:
   .1   three days' prior written notice except in an emergency;
   .2   written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month, OR AFTER CONTRACTOR HAS COMPILED ALL INFORMATION FOR CHARGES, WHICHEVER DATE IS SOONER.

**3.4   CONTRACTOR'S REMEDIES**
3.4.1   If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

## ARTICLE 4  SUBCONTRACTOR
**4.1   EXECUTION AND PROGRESS OF THE WORK**
4.1.1   The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.   SUBMITTALS ARE DUE WITHIN SEVEN (7) DAYS OF SUBCONTRACT DATE.

4.1.2   The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

4.1.3   The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

4.1.4   The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

4.1.5   The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

4.1.6   The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

4.1.7   The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

4.1.8   The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**4**

Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.   -

**4.2    LAWS, PERMITS, FEES AND NOTICES**
**4.2.1**    The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**4.2.2**    The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

**4.3    SAFETY PRECAUTIONS AND PROCEDURES**
**4.3.1**    The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

**4.3.2**    If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**4.3.3**    If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.



© 1 9 9 7    A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**4.3.4**    To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**5**

## 4.4    CLEANING UP

4.4.1    The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.    IF THE SUBCONTRACTOR FAILS TO CLEAN UP ON THE DAY OR FOLLOWING BUSINESS DAY AFTER AVERBAL OR WRITTEN REQUEST HAS BEEN MADE VISTA WILL CLEAN UP AND CHARGE THE SUBCONTRACTOR ACCORDINGLY.

4.4.2    As provided under Subparagraph 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

## 4.5    WARRANTY

4.5.1    The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

## 4.6    INDEMNIFICATION

4.6.1    To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

4.6.2    In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

## 4.7    REMEDIES FOR NONPAYMENT

4.7.1    If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.



© 1957   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

6

## ARTICLE 5  CHANGES IN THE WORK

5.1     The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.   SUBCONTRACTOR SHALL NOT PROCEED WITH ANY CHANGE ORDER WORK PRIOR TO WRITTEN NOTIFICATION BY THE CONTRACTOR.

5.2     The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

5.3     The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

## ARTICLE 6  MEDIATION AND ARBITRATION

### 6.1     MEDIATION

6.1.1     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

6.1.2     The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

6.1.3     The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### 6.2     ARBITRATION

6.2.1     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.


© 1 9 9 7   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

7

6.2.2   Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

6.2.3   A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

6.2.4   Limitation on Consolidation or Joinder. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

6.2.5   Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

6.2.6   Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7   TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT

### 7.1    TERMINATION BY THE SUBCONTRACTOR

7.1.1    The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

### 7.2    TERMINATION BY THE CONTRACTOR

7.2.1    If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the



© 1997   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

7.2.2    If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

7.2.3    Upon receipt of written notice of termination, the Subcontractor shall:
    .1  cease operations as directed by the Contractor in the notice;
    .2  take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and
    .3  except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

7.2.4    In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

### 7.3    SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE

7.3.1    The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

7.3.2    An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:
    .1  that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;
    .2  that an equitable adjustment is made or denied under another provision of this Subcontract.

### 7.4    ASSIGNMENT OF THE SUBCONTRACT

7.4.1    In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

7.4.2    The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.



©1997    A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 8  THE WORK OF THIS SUBCONTRACT

8.1    The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.

*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*

SEE ATTACHED SCOPE OF WORK

## ARTICLE 9  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

9.1    The Subcontractor's date of commencement is the date from which the Contract Time of Paragraph 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

START DATE:  AUGUST 7 THROUGH AUGUST 31, 2003 OR AS PER THE APPROVED SCHEDULE, WHICH IS FORTHCOMING.

9.2    Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

9.3    The Work of this Subcontract shall be substantially completed not later than

*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

AUGUST 31, 2003 OR AS PER THE APPROVED SCHEDULE.

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

AS SPECIFIED IN GENERAL CONDITIONS WITHIN THE CONTRACT WITH THE OWNER

9.4    With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.

9.5    No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.

© 1997  A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

10

## ARTICLE 10 SUBCONTRACT SUM

10.1    The Contractor shall pay the Subcontractor in current funds for performance of the
Subcontract the Subcontract Sum of THREE HUNDRED, FIFTY—SEVEN THOUSAND DOLLARS
Dollars (s    357,000.00              ), subject to additions and deductions as provided in the
Subcontract Documents.    Epoxy Terrazzo Flooring (epoxy & thick set): $ 305,000.00
                          Stone Base & reinstall existing thresholds:   $  52,000.00

10.2    The Subcontract Sum is based upon the following alternates, if any, which are described in
the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

10.3    Unit prices, if any, are as follows:

        $ 2.83 SF for mortar bed over and above 6,000 SF

## ARTICLE 11 PROGRESS PAYMENTS

11.1    Based upon applications for payment submitted to the Contractor by the Subcontractor,
corresponding to applications for payment submitted by the Contractor to the Architect, and
certificates for payment issued by the Architect, the Contractor shall make progress payments on
account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the
Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the
full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for
Work properly performed by their contractors and suppliers shall be held by the Contractor and
Subcontractor for those contractors or suppliers who performed Work or furnished materials, or
both, under contract with the Contractor or Subcontractor for which payment was made to the
Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing
contained herein shall require money to be placed in a separate account and not commingled with
money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on
the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or
entity to an award of punitive damages against the Contractor or Subcontractor for breach of the
requirements of this provision.

11.2    The period covered by each application for payment shall be one calendar month ending
on the last day of the month, or as follows:

11.3    Provided an application for payment is received by the Contractor not later than the
                25th day of a month, the Contractor shall include the Subcontractor's
Work covered by that application in the next application for payment which the Contractor is
entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress pay-
ment within three working days after the Contractor receives payment from the Owner. If the
Architect does not issue a certificate for payment or the Contractor does not receive payment for
any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor,
on demand, a progress payment computed as provided in Paragraphs 11.7, 11.8 and 11.9.



© 1 9 9 7   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

11

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

11.4    If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

11.5    Each application for payment shall be based upon the ~~most recent~~ schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment. WHEN THE SCHEDULE OF VALUES SUBMITTED BY THE SUBCONTRACTOR HAS BEEN APPROVED IT CANNOT BE CHANGED.

11.6    Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

11.7    Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

11.7.1    Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

11.7.2    Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

11.7.3    Subtract the aggregate of previous payments made by the Contractor; and

11.7.4    Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

11.8    Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

11.9    SUBSTANTIAL COMPLETION

11.9.1    When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the



© 1997   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

## ARTICLE 12 FINAL PAYMENT

12.1    Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

12.2    Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.
IN ADDITION TO THE ABOVE, FINAL PAYMENT WILL NOT BE ISSUED WITHOUT A FINAL RELEASE OF LIEN

## ARTICLE 13 INSURANCE AND BONDS

13.1    The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:
INSURANCE TO BE PROVIDED AS PER GENERAL CONDITIONS, PARAGRAPH 30, (with verbage as per attched form) TO INCLUDE VISTA CONTRACTING AS AN ADDTIONAL INSURED.

13.2    Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

13.3    Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.



© 1 9 9 7    A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

*The American Institute*
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**13**

13.4    The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

13.5    The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

13.6    Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*

     N/A

☒☒    ᴘᴇʀғᴏʀᴍᴀɴᴄᴇ ʙᴏɴᴅ
ⓍⓍⓍⓍ ⓌⒽⒺⓃ ⓇⒺⓆⓊⒾⓇⒺⒹ ⒷⓎ ⓉⒽⒺ ⒸⓄⓃⓉⓇⒶⒸⓉⓄⓇ ⒶⓃⒹ ⓉⒽⒺ ⓅⓇⒾⒸⒺ ⓄⒻ ⓉⒽⒺ ⒷⓄⓃⒹ
ⓍⓍ⬝ⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍ
ⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍ

☒☒    ⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍ
ⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍⓍ
and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

☒☒    ⓅⓇⒾⒸⒺ ⓄⒻ ⓉⒽⒺ ⒷⓄⓃⒹ ⒾⓃⒸⓁⓊⒹⒺⒹ ⒾⓃ ⓉⒽⒺ ⓈⓊⒷⒸⓄⓃⓉⓇⒶⒸⓉ
ⓈⓊⒷⒸⓄⓃⓉⓇⒶⒸⓉ ⓈⓊⓂ ⓌⒽⒺⓃ ⓇⒺⓆⓊⒾⓇⒺⒹ ⒷⓎ ⓉⒽⒺ ⒸⓄⓃⓉⓇⒶⒸⓉⓄⓇ ⓉⒽⒺ
ⓈⓊⒷⒸⓄⓃⓉⓇⒶⒸⓉⓄⓇ ⓈⒽⒶⓁⓁ ⒻⓊⓇⓃⒾⓈⒽ ⓉⒽⒺ ⒷⓄⓃⒹ

### 13.8    WAIVERS OF SUBROGATION

13.8.1   The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

### ARTICLE 14 TEMPORARY FACILITIES AND WORKING CONDITIONS

14.1    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

14.2    Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

DAVIS-BACON ACT APPLIES
PAYROLLS REQUIRED ON A WEEKLY BASIS
EXCESSIVE NOISE REQUIRES NIGHT HOURS.

## ARTICLE 15 MISCELLANEOUS PROVISIONS

15.1    Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

15.2    Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

15.3    Retainage and any reduction thereto is as follows:
NO RETAINAGE HELD UNLESS HELD BY OWNER.

15.4    The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

## ARTICLE 16 ENUMERATION OF SUBCONTRACT DOCUMENTS

16.1    The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

16.1.1    This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

16.1.2    The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;



©1997 AIA®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**15**

16.1.3   The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

Modification                                                    Date

AMENDMENT #1                                                JUNE 20, 2003

16.1.4   Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*

Acceptance of this agreement by David Allen Company, Inc. is based upon the attached Amendment 1 becoming an integral part of the subcontract agreement.

This Agreement entered into as of the day and year first written above.

CONTRACTOR *(Signature)*                        SUBCONTRACTOR *(Signature)*
                                                                    David Allen Company, Inc.
                                                                    David Roberson, Vice President

G. Guethde - PRES.

*(Printed name and title)*                                *(Printed name and title)*



© 1997   AIA®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

CAUTION: *You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.*

16

## VISTA CONTRACTING, INC.
### Washington, D.C.

### Amendment 1

Project:    **Longworth House Office Building**

Date of Subcontract:        **July 15, 2003**

**Article 9**

All schedule requirements imposed on the Subcontractor shall be mutually agreed upon and subject to timely availability of work areas. Prior to directing the Subcontractor to start work, the Contractor shall see that the areas scheduled for the work herein required have been inspected and are suitable and ready for the work to be done.

Should the Subcontractor be required to stop work because of the activities of the Owner and others and through no fault of the Subcontractor, then the Subcontractor shall receive $175,35 per hour of down time until the Subcontractor can resume work.

**Scope of Work**

**The conditions of the attached David Allen Company proposal (items 1 – 11), dated July 10, 2003, are an integral part of the subcontract agreement.**

Shot blasting will be performed in lieu of providing a mud underbed.

General Contractor: _____

Page 1 of 2

Subcontractor: _____

AUG-05-2003  00:14    DAVID ALLEN COMPANY    703 257 7579    P.01/01

# DAVID ALLEN COMPANY

P.O. Box 3163 • Manassas, VA  20108-2775 • (703)690-4422 • Fax: (703)368-1576

### TILE • MARBLE • TERRAZZO

**TO:**    Vista Construction Company
           *Attn: Stjepan Sostaric*
           202-543-3180 Fax 301-543-3164

**Building:**    Longworth House Office Building

**Location:**    Washington DC

> - This quotation is specifically based upon the conditions hereon. Any subsequent agreement shall be on AIA Document A401 Subcontract Form, Current Edition.
> - Final acceptance of this agreement or any other agreement resulting from this proposal is contingent upon verification of timely availability of funds and upon credit approval of the owner, contractor, or other parties responsible for payment.

**Architect:**

# PROPOSAL

July 10, 2003

Gentlemen:

We propose to furnish and install in accordance with plans and specifications dated 9/28/2001,  and as noted below:

### SECTIONS: 9402 Epoxy Terrazzo, 09751 Interior Stone Facing

FOR THE SUM OF    Base Bid:    Terrazzo Flooring (Epoxy & Thick set):    **$308,090.00**
                               Stone Base & reinstall existing thresholds:    **$55,000.00**

The above price is based upon:

1.) David Allen Company will place terrazzo grinding residue and debris at an on site location supplied and designated by the GC.
2.) Proper substrate preparations, environmental conditions are to be by others.
3.) We exclude the following: Cost of Bond; Metal Expansion Joints; floor leveling for terrazzo, Demolition; Floor Fill;
4.) 220 or 208-volt, 100 amp and 480 volt, 100 amp electrical service with hookups and disconnects within 200 feet of any terrazzo areas.
5.) Clean water supply shall be brought to within 250 feet of any terrazzo area.
6.) Material storage on site to be provided by GC.
7.) <u>DAC is a contractor member of NTMA required by specification</u>.
8.) Includes 100% Membrane under terrazzo flooring.
9.) Includes 50% (5500 sf to 6000 sf) thick set terrazzo flooring (bonded terrazzo).
10.) Includes 8"h stone base and plinths (8"Hx6"widex3/4"tk). All edges to be polished per specification.
11.) Stone base at radius wall to be segment pieces.

THIS ESTIMATED OFFER IN PROPOSAL FORM, BASED ON THE CONDITIONS LISTED ON BACK OF THIS SHEET, SHALL BE AN INTEGRAL PART OF ANY ORDER ACCEPTED BY THE UNDERSIGNED CONTRACTOR. This proposal is subject to acceptance within twenty (20) days from date and is void thereafter at the option of the undersigned.

Respectfully submitted,

_____
Date Accepted

_____
Contractor or Owner

_____
Signature

**DAVID ALLEN COMPANY, INC.**

By: _____
        Min M Gao, Estimator

RALEIGH • WASHINGTON, D.C. • COLUMBIA, S.C.

*When accepted, please return the original, properly signed, promptly.*

General Contractor: _____

Initial:

Page 2 of 2

Subcontractor: _____    TOTAL P.01